IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Victoria West,<br><br>            Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>           Defendant. | No. CV-20-00487-TUC-SHR<br><br>**Order Adopting Report and Recommendation** |

On February 4, 2022, Magistrate Judge D. Thomas Ferraro filed a Report and Recommendation ("R&R"), recommending the Court affirm the Commissioner's final decision. (Doc. 29.) The Magistrate Judge informed the parties they had fourteen days to file objections to the R&R, and an additional fourteen days to respond. (*Id.* at 12). Plaintiff Victoria West has objected (Doc. 30) and the Commissioner did not file a response.

**I.    Report and Recommendation Standard of Review**

Regardless of whether responses are filed, the Court must perform a de novo review of issues raised in an objection. *See* Fed. R. Civ. P. 72(b)(2)-(3) (requiring de novo review of objections, but not mandating a response); *see also* 28 U.S.C. § 636(b)(1)(C). The Commissioner did not respond to West's objections; thus, the Court reviews this matter de novo, without the benefit of the Commissioner's position.

**II.   Factual and Procedural History**

West does not object to the Magistrate Judge's factual and procedural history, but rather objects to how the Magistrate Judge interpreted the vocational expert ("VE")'s

testimony. (Doc. 30 at 1-3.) Therefore, the Court adopts the factual and procedural history and will not restate them here.

### III. Standard of ALJ Review

To determine whether a claimant is disabled, an ALJ must conduct a five-step evaluation. *See* 20 C.F.R. §§ 404.1520, 416.920. The burden first rests on a claimant to show the following: In step one, a claimant must show he has not engaged in substantial gainful activity since the alleged onset of disability. In step two, a claimant must demonstrate a severe impairment(s). For step three, a claimant must prove his alleged impairment(s) meets or equals the listed impairment(s) in 20 C.F.R. Part 404, Subpart 404, Appendix 1. *See* 20 C.F.R. §§ 404.1520, 416.920. "If the claimant satisfies these three steps, then the claimant is disabled and entitled to benefits. If the claimant has a severe impairment that does not meet or equal the severity of one of the ailments listed[,] . . . the ALJ then proceeds to step four, which requires the ALJ to determine the claimant's residual functioning capacity (RFC) based on all the relevant evidence in the record, including impairments not classified as 'severe.'" *Dominguez v. Colvin*, 808 F.3d 403, 405 (9th Cir. 2015) (citing 20 C.F.R. § 416.920(a)(4)(iv)). The RFC reflects "the most the claimant can do, despite any limitations." *Id.* (citing 20 C.F.R. § 416.945(a)). "After developing the RFC, the ALJ must determine whether the claimant can perform past relevant work" under step five. *Id.* At step five, the burden shifts to the government, who must show "that the claimant could perform other work existing in significant numbers in the national economy given the claimant's RFC, age, education, and work experience." *Id.*; 20 C.F.R. §§ 404.1520, 416.920.

The ALJ's decision can only be reversed when it is not supported by substantial evidence or constitutes harmful legal error. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney ex rel. Matney*, 981 F.2d 1016, 1019 (9th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). "Substantial evidence

means . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). On review, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). The ALJ draws inferences, resolves conflicts in medical testimony, and determines credibility—not this Court. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Therefore, "[w]here evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation marks and citation omitted); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) ("[W]e leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.").

**IV.    Discussion**

The sole issue before the Court is whether substantial evidence supports the ALJ's determination that West's past relevant work as a chef in a private home exists generally in the national economy. (Doc. 30 at 1, 3.) If the evidence can support the ALJ's determination that West's past relevant work falls under the Dictionary of Occupational Titles ("DOT"), then the ALJ's decision must stand. *See Aukland*, 257 F.3d at 1035.

West asserts the Magistrate Judge erred when he "formulated the VE's testimony as presenting a clear dichotomy between a description of Ms. West's past relevant work as actually performed and as generally performed in the national economy," because "the actual testimony is far more ambiguous." (Doc. 30 at 2.) Specifically, West asserts:

> The VE, the ALJ, and counsel discussed the term "chef" in connection with several different DOT titles; used the terms "cook" and "chef" somewhat interchangeably; and directly discussed the DOT title that the ALJ ultimately decided applied to Ms. West's work in the private home only once, at AR 62. *See* AR 62-73. This lack of clarity makes review difficult; but

>one thing that is clear is that the VE stated that Ms. West's past relevant work was "unique," i.e., not contemplated by the Dictionary of Occupational Titles. *See* AR 71.

(*Id.*)  West argues it is "impossible" to tell from the transcript when the VE used "chef" to refer to the DOT title or to refer to the term in "common parlance" and, ultimately, "the VE did not testify unequivocally that Ms. West ever held a position directly analogous to the DOT title of 'chef' bur rather started with one idea, contemplated and discussed other ideas, and concluded that the job in question was 'unique.'" (*Id.* at 3.)  That is, West argues the VE's testimony is ambiguous.  Therefore, West contends, substantial evidence does not support the ALJ's finding that West could perform her past relevant work as generally performed in the national economy because "substantial evidence does not support a finding that Ms. West's past relevant work exists generally in the national economy." (*Id.*)

West also argues the Magistrate Judge erred in finding *Lourdes V. v. Berryhill*, 2019 WL 1639746 (C.D. Cal. Apr. 15, 2019), persuasive because the claimant in that case offered no explanation as to why identical tasks performed in a retail versus restaurant setting justified rejecting the VE's conclusion that the claimant could perform her past relevant work as an order clerk. (Doc. 30 at 2.)  Here, West contends the VE testimony "establishes that similar-sounding duties performed in the context of a restaurant differ from those performed in the context of a private home because 'her job tasks varied. They're not the same every single day, like working in a restaurant.'" (*Id.* (quoting AR 70-71).)

In *Lourdes*, the claimant argued the VE had misidentified her past relevant work of "taking orders over the phone" for a produce company as that of a food and beverage order clerk because the DOT description of a food and beverage order clerk contemplates work performed at a hotel or restaurant, but the claimant's job was not in such a setting.  2019 WL 1639746 at *3.  The court rejected that argument, finding: "while the occupation identified by the VE may not be a precise match with Plaintiff's job at Family Tree Produce, it is entirely consistent with Plaintiff's own description of her job as answering phones and taking produce orders." *Id.*  The court further noted that although that claimant

had not performed her past relevant work in the setting of a hotel or restaurant, she cited no authority for the proposition that the variation in setting necessarily precluded the VE's conclusion, and nothing in the record suggested her duties substantially differed from the DOT description of a food and beverage order clerk. *Id.*

Here, West testified her past relevant work was primarily cooking for a family in their private home, along with cooking for large groups of up to 50 or more when the family hosted gatherings in the home. (AR 54, 58–61.) She testified cooking made up 80% of her job, but she also managed food and drink inventory, ordered and purchased food and drink, planned menus, cleaned the kitchen after meals, was on site for scheduled maintenance, acted as hostess when guests arrived and the family was not home, did paperwork and bookwork, and occasionally hired and supervised staff from outside the home for large gatherings. (AR 58-61, 66.) The VE expert testified that, based on West's description of her work, she worked as a Chef as defined as DOT #313.131-014. The DOT describes such an occupation as:

> Supervises, coordinates, and participates in activities of cooks and other kitchen personnel engaged in preparing and cooking foods in hotel, restaurant, cafeteria, or other establishment. Estimates food consumption, and requisitions or purchases foodstuffs. Receives and examines foodstuffs and supplies to ensure quality and quantity meet established standards and specifications. Selects and develops recipes based on type of food to be prepared and applying personal knowledge and experience in food preparation. Supervises personnel engaged in preparing, cooking, and serving meats, sauces, vegetables, soups, and other foods. Cooks or otherwise prepares food according to recipe [COOK (hotel & rest.) 313.361-014]. Cuts, trims, and bones meats and poultry for cooking. Portions cooked foods, or gives instructions to workers as to size of portions and methods of garnishing. Carves meats. May employ, train, and discharge workers. May maintain time and payroll records. May plan menus. May supervise kitchen staff, plan menus, purchase foodstuffs, and not prepare and cook foods [EXECUTIVE CHEF (hotel & rest.) 187.167-010] . . . .

313.131-014 Chef, DOT 313.131-014, 1991 WL 672704 (2016). The VE also acknowledged that although the DOT classifies that occupation as requiring a light exertion

level, based on West's description of her work, she had performed the duties at a medium exertion level. (AR 62-63.) The ALJ posed a hypothetical to the VE, asking whether someone with the same age, education, past relevant work experience, and limitations as West could perform the job of Chef. (*Id.*) The VE testified such a person could perform the job, but not as West had done so, because she had been performing the job at a higher exertion level than required by the DOT. (AR 63-64.) The VE also acknowledged two of West's past jobs were not "typical," as she had not only worked in the private home, but also worked as a cook at outfitter/flyfishing establishments. (AR 71.) When West's counsel asked the VE about how much standing versus sitting could be done in West's past jobs in the private home and the outfitters, the VE answered: "It sounds to me like she's had jobs that aren't typical such as working in a residence or working in an outfitters. Those are more unique." (AR 70-71.) When asked if those jobs would have had days when the employee would be just standing and other days when they would just be sitting, the VE said: "It sounds to make her jobs more unique, though, as far as being the cook because her job tasks varied. They're not the same every single day, like working in a restaurant." (AR 70.) When clarifying the other cook positions she had referenced in her testimony and when explaining the differences between those cook jobs and the chef job described above, the VE explained the chef job in the private home was "lighter," as West had been "doing more menu planning" in that job. (AR 69.)

Based on the record, the Court finds the VE's testimony supports the ALJ's finding that West's past relevant work as a private chef in a home falls under the DOT's Chef title. Although the VE's testimony could perhaps be read as establishing similar cooking duties differ in the context of a restaurant versus a private home, as West argues, it could also reasonably be read as explaining that despite the uniqueness of working as a private chef, West's job was that of a Chef as contemplated by the DOT. Specifically, the Court notes when the VE acknowledged West's tasks varied and were not the same each day, like in a restaurant, she was answering a question about how often West would have been on her feet in both the private home and outfitters jobs—she was not talking about the duties of the jobs generally. Contrary to West's assertion, this testimony, when considered in light

of the entire record, supports the ALJ's conclusion that West worked as a Chef, which is a position that generally exists in the national economy.  Moreover, like in *Lourdes*, West cites no, and the Court is unaware of any, authority for the proposition that the variation in setting (i.e., private home versus restaurant) necessarily precludes the ALJ's conclusion. *See* 2019 WL 1639746 at *3.  And although West described some duties that differed from the DOT Chef description, such as being on site at the home for maintenance, acting as hostess when the family was not there, and perhaps some bookkeeping and paperwork, nothing in the record suggests these substantially differed from DOT description of chef. *See id.*

Although the DOT #313.131-014 Chef description may not be a precise match with West's job in the private home, substantial evidence supports the ALJ's conclusion that the DOT #313.131-014 Chef description is consistent with West's own description of her job and, therefore, West could perform her past relevant work as a chef as generally performed in the national economy.  And, although the evidence may be susceptible to another interpretation, that is not a proper basis for overturning the ALJ's decision. *See Orn*, 495 F.3d at 630; *see also Treichler*, 775 F.3d at 1098.

Accordingly,

**IT IS ORDERED:**

(1) Magistrate Judge D. Thomas Ferraro's Report and Recommendation (Doc. 29) is **ADOPTED**.

(2) The findings of the Commissioner are **AFFIRMED**.

(3) The Clerk of Court shall enter judgment accordingly and close this action.

Dated this 29th day of March, 2022.

Honorable Scott H. Rash
United States District Judge